**IOWA BEEF PACKERS, INC., a Corporation, et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**HAGEN, INC., a Corporation, et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. Nos. 67–C–3016–W, 67–C–3017–W.**

United States District Court
N. D. Iowa, W. D.
April 16, 1969.

P. L. Nymann, Dakota City, Neb., and Eugene D. Anderson, Chicago, Ill., for Iowa Beef Packers, Inc.

William L. Fairbank, Des Moines, Iowa, for intervening plaintiffs Decker Truck Line, Inc.

Charles Kimball, Donald E. Leonard and Earl H. Scudder, Jr., Lincoln, Neb., and W. J. Giles, III, Sioux City, Iowa, for W. J. Digby a corporation.

D. W. Acklie and Richard A. Peterson, Lincoln, Neb., for Commercial Carrier Corporation and Hilt Truck Line, Inc.

Joseph M. Scanlan, Chicago, Ill., for Argo Collier Truck Lines Corp. and Bos Lines, Inc.

John J. Vizintos, Sioux City, Iowa, for Swift & Co.

Steve Turner, Asst. U. S. Atty., Sioux City, Iowa, and John H. D. Wigger, Washington, D. C., for the United States of America.

Steven Kazan, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Donald L. Stern, Omaha, Neb., and Frank J. Margolin, Sioux City, Iowa, for intervening defendant Midwest Coast Transport, Inc.

Wm. E. Livingstone, III, Dallas, Tex., for intervening defendant Frozen Food Express, Inc.

W. J. Giles, III, Sioux City, Iowa, for Hagen, Inc.

## MEMORANDUM

Before VAN OOSTERHOUT, Circuit Judge, and McMANUS and HANSON, District Judges.

HANSON, District Judge.

This is an action to review an Order of the Interstate Commerce Commission pursuant to Section 10 of the Administrative Procedure Act, 5 U.S.C. Sections 701–706. Because certain aspects of the Commission's report are sought to be enjoined, 28 U.S.C. § 2325, the cause comes on for disposition before a Three-Judge District Court, 28 U.S.C. § 2284.

The controversy involves the competing desires of motor common carriers to provide service from meat-packing houses in the vicinity of Sioux City, Iowa, to points throughout the continental United States. The carriers filed applications with the Commission for the appropriate certificates of public convenience and necessity. Disposition was made of these applications by the Hearing Examiner in his Report and Recommended Order of March 8, 1966 (hereinafter cited as Report). The Examiner's action was substantially upheld by Order of the Commission, Division I, served July 18, 1966. Thereafter the carriers aggrieved by said Order exhausted their administrative remedies without altering the Commission's decision.

This cause is a consolidation of Civil Action No. 67–C–3016–W and Civil Action No. 67–C–3017–W. Both causes attack the action of the Commission in denying certain applications for certificates of public convenience and necessity.

The responsibility of the Interstate Commerce Commission is national in scope. See 49 U.S.C. preceding Section I. Consistent with the operations of regulatory agencies in general, the Commission is charged with fostering an effi-

cient, fair and coordinated national system of transportation. To this end the Commission issues certificates to those applicants whose proposed service "is or will be required by the present or future public convenience and necessity." See 49 U.S.C. Section 307.

■ In the instant case the Commission has made a judgment that the public convenience and necessity will be served by the allowance of some applications and denial of others. This Court's ambit of review is narrow. It is fundamental that the determination of "public convenience and necessity" is for the Commission. See United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945); ICC v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945). It is equally well-settled that a court may not substitute its judgment for that of the Commission. See Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L. Ed. 1147 (1939); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934); Kroblin Refrigerated Xpress, Inc. v. United States, 197 F.Supp. 39 (N.D.Iowa 1961). The defendants have correctly stated that "The only question before this Court is whether the Commission's determination of the need for the certification of additional motor carrier service and its selection of the motor carriers to meet such need were rational, based on adequate findings supported by substantial evidence of record and in accord with the applicable law." This delineation of available judicial review comports with the statutory mandate, 5 U.S.C. Sections 701–706, and authority thereunder, see, e. g., Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

Hearings on the carriers' applications were held October 11 through 15, 18 and 19, and November 8 through 11, 1965 in Chicago, Illinois. The Hearing Examiner in his Report compiled the evidence adduced by applicants, Report at 4–51, shippers, Report at 51–60, and other sources, Report at 60–84. The Commission in substantially affirming the Hearing Examiner, Riss & Company, Inc., Extension—Dakota County, Nebr., 102 M. C.C. 336, incorporated by reference the examiner's statement of facts, 102 M.C.C. at 337, and again described the general factual background of this cause, 102 M.C.C. at 337–39.

It is unnecessary to set out every allegation in which the plaintiffs claim that the decision of the Commission was against the facts or where the Commission is alleged to have erred in giving improper weight to certain facts. The Court has carefully considered each allegation. The administrative recitation of facts can only be characterized as admirable and exhaustive. We find that both the Examiner and Commission proceeded by grouping relevant facts around the following criteria:

(1) The availability of an applicant's motor vehicle equipment in the general area is a prime consideration.

(2) Coupled with the availability of equipment, the present operating authorities of the applicants should be given considerable weight.

(3) In assessing the public need for services in individual destination states the availability of existing services and the volume of Iowa Beef's anticipated requirements to that particular part of the country should be carefully considered.

(4) Neither shipper support nor the absence of protests should be determining factors in granting or denying applications or parts of applications.

See 102 M.C.C. at 341.

This mode of analysis is clearly contemplated by applicable standards. See Best Truck Lines, Inc., Extension—Em-

poria, 98 M.C.C. 202 (1965); Pan American Bus Lines Operation, 1 M.C.C. 190 (1936). Further, the facts grouped around each criterion are sufficient to support the findings therefrom. See Report at 91–92; 102 M.C.C. at 356–57. These conclusions dictate a final finding that the entire administrative procedure was rational and free from caprice.

This is not to say that as a de novo matter the Court necessarily would reach the Commission's result in every instance of this cause. Facts often admit of varying inferences, and discretion may be uncertain. The controlling standard of review, however, is not so demanding. It is enough to find, as we do, that the Commission's decision is rational, based on adequate findings supported by substantial evidence of record, and in accord with the applicable law. The Supreme Court has said:

> "Congress was very deliberate in adopting this standard of review. It frees the reviewing courts of the time-consuming and difficult task of weighing the evidence, it gives proper respect to the expertise of the administrative tribunal and it helps promote the uniform application of the statute. These policies are particularly important when a court is asked to review an agency's fashioning of discretionary relief. In this area agency determinations frequently rest upon a complex and hard-to-review mix of considerations. By giving the agency discretionary power to fashion remedies, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency."

See Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620–621, 86 S.Ct. 1018, 1027 (1966).

Accordingly, it will be ordered that the relief requested in the complaints will be denied and the complaints dismissed at plaintiffs' costs.